**AQUA–AEROBIC SYSTEMS, INC.,
Plaintiff–Appellant,**

v.

**AERATORS, INC. and Frank Nocifora,
defendants–appellees.**

**No. 98–1465.**

United States Court of Appeals,
Federal Circuit.

May 3, 2000

J. Christopher Carraway, Michael Best & Friedrich, LLP, of Milwaukee, Wisconsin. With him on the brief was Michael E. Husmann.

Charles S. Oslakovic, Leydig, Voit & Mayer, Ltd., of Rockford, Illinois. With him on the brief was Gregory C. Bays, Leydig, Voit & Mayer, Ltd., of Chicago, Illinois.

Before NEWMAN, Circuit Judge, SMITH, Senior Circuit Judge, and BRYSON, Circuit Judge.

NEWMAN, Circuit Judge.

Aqua–Aerobic Systems, Inc. appeals the summary judgment of the United States District Court for the Northern District of Illinois,[1] holding that Aerators Inc. and Frank Nocifora (collectively "Aerators") do not infringe Aqua–Aerobic's United States Patent No. 4,422,771 ("the '771 patent"). We affirm the judgment of the district court.

## BACKGROUND

Downflow mixers are used in water treatment ponds and tanks, wherein a pump is mounted on a flotation device with the propeller suspended below the surface. The liquid to be mixed enters the pump casing above the propeller and flows down to the propeller, from whence it is recirculated into the pond or tank.

The downflow mixer of the '771 patent, like those of the prior art, encloses the propeller shaft in a stabilizer tube. The shaft and propeller are supported by an anti-deflection bearing that is mounted near the lower end of the tube and lubricated by the liquid flowing down the tube. Aqua–Aerobic states that the downflow mixer of the '771 patent solved problems of prior art mixers relating to vibration and damage to the propeller as well as failure of the anti-deflection bearing. The patent explains that in prior art downflow mixers atmospheric air enters around the top of the propeller shaft and passes downward through the stabilizer tube, and air also enters at the top of the pump casing at the joint with the motor mounting plate.

1. *Aqua–Aerobic Systems, Inc. v. Aerators, Inc.,* No. 96 C 50151, 1998 WL 293996 (N.D.Ill. June 4, 1998).

The '771 patent teaches that by excluding atmospheric air, cavitation[2] at the propeller is prevented, thereby averting the excessive vibration and ensuing damage encountered in prior art downflow mixers.

The patented device is illustrated as follows:

As described in the '771 specification, seal **51** is placed between the propeller shaft **32a** and the stabilizer tube **44**, thereby preventing atmospheric air from reaching the propeller from this source. The seal **51** also prevents drying of the anti-deflection bearing **48** by eliminating atmospheric air from the fluid flow past the bearing. The entry of air at the top of the casing **11** is also prevented by making the motor mounting plate **38** solid, that is, without holes or spaces except as needed to accommodate the propeller shaft and stabilizer tube. The joint **38b** between the mounting plate **38** and the pump casing **11** bears a gasket or sealing compound.

Aerators makes a downflow mixer called the "Aqua–Lator DDM Direct Drive Mixer." It was conceded by Aerators that all of the elements of claim 1, the broadest claim, are literally present in the Aqua–Lator mixer except for the final two claim clauses, shown with emphases and bracketed numbers added:

2. "Cavitation" is defined as "the rapid formation and collapse of vapor pockets in a flowing liquid in regions of very low pressure, often a frequent cause of structural damage to propellers, pumps, etc." The Random House Dictionary, 1967.

1. A downflow mixer for mixing materials in an open surface body of liquid comprising,

*       *       *

[12] wall means extending between the shaft stabilizer means and the upper casing across said upright passage for *preventing passage of atmospheric air* through the upright passage to the propeller,

[13] and mechanical shaft seal means between the shaft stabilizer means and the extended shaft portion at a location above the anti-deflection bearing means for *preventing the flow of atmospheric air* through said shaft enclosure to the anti-deflection bearing means and propeller.

The district court construed the phrases "preventing passage of atmospheric air" and "preventing the flow of atmospheric air" as having different meanings as to the amount of air that is excluded. Reasoning that "flow" means a "movement that is smooth, continuous and uninterrupted," whereas "passage" means "to pass from one place to another," the court held that the shaft seal, which prevents the "flow" of air, had to eliminate "any smooth, continuous" air movement but could permit the passage of "a mere minuscule or negligible amount" of air. However, the prevention of the "passage" of air was interpreted as requiring that all air is excluded from passing by or around the wall. Finding that neither of these criteria was met in the accused device, literally or equivalently, the district court granted summary judgment of non-infringement.

## DISCUSSION

Aqua–Aerobic argues that both of these claim clauses must be interpreted as permitting the passage of more than a minuscule or negligible amount of air, for its engineering expert testified that persons of skill in this field of mechanics would understand that the structure described in the specification is not air-tight. Aqua–Aerobic states that the correct claim construction is that the seals prevent the passage of sufficient air to cause cavitation at the propeller. From this construction, Aqua–Aerobic argues that the Aerators mixer must be in infringement because it does not experience cavitation at the propeller.

Aerators responds that the specification states, clearly and explicitly, that the patented invention is the sealing of the system to exclude all atmospheric air. Aerators argues that the claims must be construed as they are written and as the invention is described in the specification, and that these critical limitations can not be negated by a litigation position, even if supported by evidence, that contradicts the plain reading of the specification and claims. Aerators states that its system is not air-tight, and that its expert witness demonstrated that the Aerators mixer passed significantly more than a negligible or minuscule amount of air. Thus Aerators states that its mixer can not infringe the claims.

■ The expert witnesses for both sides agreed that persons of skill in this field would understand that the structure described in the '771 patent is not air-tight. The district court stated that it had not considered the expert evidence, stating that *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1577 (Fed.Cir.1996) barred consideration of evidence extrinsic to the patent documents. However, expert testimony that is admissible in the proceeding, *see* Fed.R.Evid. 702,[3] may be considered by the court and given weight appropriate to its content. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.,* 182 F.3d 1298, 1308, 51 USPQ2d

**3.** Rule 702. Testimony by Experts

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

1161, 1167 (Fed.Cir.1999) ("Despite the district court's statements to the contrary, *Vitronics* does not prohibit courts from examining extrinsic evidence, even when the patent document is itself clear.")

■ The experts agreed that the system is not air-tight. However, the district court's claim construction is in accord with the teachings of the specification, which do not permit more than a negligible or minuscule amount of air to enter and pass through the mixer. The undisputed testimony that experts would understand that the described sealing system would not produce an air-tight device, does not broaden the claims to the extent Aqua–Aerobic now proposes, that its claims should be construed to reach a system that passes a significant amount of atmospheric air. This is directly contrary to the limitations in the claims and the description in the specification.

■ Expert testimony is often useful to clarify the patented technology and to explain its meaning through the eyes of experience, but it may not correct errors or erase limitations or otherwise diverge from the description of the invention as contained in the patent documents. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 981, 34 USPQ2d 1321, 1331 (Fed.Cir.1995) (*en banc*) ("Extrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims."), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996). The district court correctly rejected Aqua–Aerobic's proposal that the claim should not be limited by the amount of air that passes or flows through the system but instead should be construed to cover any downflow mixer that does not suffer cavitation at the propeller. That is not the invention described and claimed by the patentee.

■ Aerators presented, through its expert, experimental evidence that the Aerators mixer admits more than a negligible or minuscule amount of air to the propeller. This evidence was not controverted by any technical submission of Aqua–Aerobic, although Aqua–Aerobic's expert generally criticized the experiment and the conclusion drawn. However, Aqua–Aerobic did not proffer any evidence to show the extent of Aerators' exclusion of air, or to show any relation between the absence of cavitation in the Aerators mixer and the exclusion of air. Aqua–Aerobic relied solely on Aerators' advertising statement that its mixer does not add air to the system being mixed, and on the argument that since the Aerators mixer does not experience cavitation it must practice the '771 invention. Aerators responds that it indeed does not experience cavitation, and attributes this result to improved design, not to the exclusion of air.

Aqua–Aerobic did not proffer evidence whereby a reasonable jury could have found infringement, either literally or under the doctrine of equivalents, of claims that permit no more than a minuscule or negligible amount of atmospheric air to pass to the propeller. The summary judgment of non-infringement is

*AFFIRMED.*